All right, our sixth case for this morning is United States v. Foster. Ms. Wood. May it please the court, because Mr. Foster was convicted under 924C, the district court was wrong to also apply the threat of death enhancement under 2B 3.1 B2F in calculating his sentencing guideline range for his underlying bank robbery offense. The plain language of application note 4 to 2K 2.4, which states that a sentence under 924C accounts for any explosive or weapon enhancement for a defendant's underlying offense of conviction, including for relevant conduct, makes- Can I ask you, as I looked at this case, it seemed to me to actually present a fairly clean issue about whether that reference to relevant conduct at the end of application note 4 has pushed aside the earlier, in White and other cases, the earlier law in this court saying was it different underlying conduct, which appears to have been a different concept from relevant conduct. A lot of things might be relevant conduct, even though it's gun number one, bomb number two, you know, day number three. Correct. And I think that that addition in 2000 has pushed aside the different underlying conduct standard that this court used in White. And that's based on three things. First is the plain language of application note 4. The prohibition against enhancements for either the offense conduct or relevant conduct is not limited in any way. Is it clear that the relevant conduct reference in application 4 refers to relevant conduct of the underlying offense as opposed to the 924C conviction? Because this is, this note is found, it's an application note to 2K 2.4 dealing with the 924C. Judge, I think it is clear. If you look at the committee commentary and the reason for the amendment that was propagated by the Sentencing Commission, they have said that, they actually cite a Ninth Circuit case, United States v. Willett, as an example of something that was wrongly decided. And there, they have said, that involved a defendant who used both a And they have said that that defendant should not have been enhanced under, because he had the 924C conviction. And so I think that that makes clear that they are referring to the relevant conduct in the underlying offense rather than the 924C conviction. So is it your position that the last part of that paragraph of application note says if a defendant is convicted of two armed bank robberies, but is convicted of the 924C only in connection with one of them, a weapons enhancement would be appropriate for the other bank robbery? Is it your argument then that that wouldn't be related conduct, the two bank robberies? I think that, I think that in that case, you could have a weapons enhancement for a second bank robbery based on the plain language of the application note. And if we look at, if we look at the grouping rules too, those are treated as two separate offenses under the However, that's, that's sort of a unique, that's one of the unique situations I would say under this application note. But in that case, you could have an enhancement. But in this case, where there was just one robbery, I believe an enhancement is prohibited by that language. What do you recommend we do with, or what thoughts do you have on our 2007 decision in Catalytic? So, I think the opinion itself, that the holding in Catalytic can stand. On its facts, right? Correct. I think that Catalytic's reference to white in dicta is respectfully, I would say, does not, is not, contravenes application note four. However, Catalytic's holding that a threat of death enhancement falls within the ambit of this application note, I think, is good law. So in addition to the plain language of application note four, I think the other way that we can tell that this, this different underlying conduct standard has been effectively overturned by the Sentencing Commission is its language. Like I was saying, it cited United States v. Willett in saying that this is a case, this is what we don't want to happen going forward. And United States v. Willett is one of the few cases that, like this case, involves two separate, or involved two separate, actually three separate types of weapons. A gun, and a knife, and a silencer in that case. This case involves a gun and a bomb threat. Correct. Most of the other cases that, that deal with this issue involve either two guns or a gun and a threat of death focusing on a gun. And so the fact that the, the Sentencing Commission specifically took Willett and said, hey, we think this is wrong, I think should have... With the different instrumentalities you're saying. Correct. I think that they have made clear that it is not just in a case where two guns are involved, or a gun, and... We clearly have a death threat here, right? There's no question about that. Didn't Anderson say I'm going to blow the place up? Yes. But we don't have a, we, I mean, I, I've actually, I think of it as a fake bomb myself as well, but there's no, there's literally no fake bomb, right? There's no fake bomb. It's a, it's a statement. I have a bomb and I'm going to blow the place up. That's correct. And the government argues in its response brief that because it is just a threat, it would not fall within the ambit of that application note. Because it doesn't involve any use of an explosive in any way. Based on that revised language in 2000. However, every circuit, including this one, has rejected that argument. Catalynic involved a threat that was a threat relating to a gun. But there, this court said that a threat, despite the fact that the Sentencing Commission took out specific reference or specific site to 2B.3.1.B.2.F., that threat still qualifies as an explosive or weapons enhancement under the new application note. So, to just break that down, use can include making a threat with, right? So, use of a gun could be, I'm going to shoot you, even though you're not pulling a trigger. So, so use is, threats are a form of use. And your argument is that I suppose much along the lines of, you know, you could be using a gun even if it's a plastic gun that you bought at a child's toy store, that's still use of a gun, right? That's correct. And I don't even, I don't even think we have to get to the fact of whether a threat qualifies as use. Because the application note states that any explosive or weapons through E, that language broadens the scope of the application note to include things like this case where a threat was made. But yes, I think in United States v. Eubanks actually involved a plastic gun. And in that case, this court did hold that using that gun to beat somebody was a use of the gun. But the application note that we're referring to and not as any enhancement for a weapon. It gives the language of possession, brandishing, use, or discharge of an explosive. It's much, it's more specific. It does say that, but then it does go on to say that any explosive or, that a sentence under 924C accounts for any explosive or weapon enhancement for a defendant's underlying conduct or conduct that would qualify as relevant conduct. So I believe that that does broaden the scope of the note beyond that first sentence. I see I only have about a minute left and I'd like to reserve some of my time. That would be fine. Thank you. Ms. Kostanek. May it please the court. The district court did not err in implying an enhancement for threat of death based on the defendant's co-conspirator's threats to use a bomb during the robbery. I mean, my problem is exactly what I said, though. This change in the guidelines with which we have only imperfectly caught up, I mean, our non-presidential decisions are a bit all over the block, speaks of relevant conduct and that's a very well understood concept under the guidelines. And it's a broader concept than our separate offense conduct idea was, which might have been a fine idea, but it's not the one that the sentencing guidelines adopted, that the sentencing commission chose to adopt. So at a minimum, it seems to me we need to clean up our law on this and I think, you know, we need to deal with relevant conduct. I agree, Your Honor. There is tension between this new application note and the earlier white decision as well as some of the non-presidential decisions. Application note 4 does broaden the concept to include relevant conduct, but unlike the cases the defendant cites from the Ninth Circuit, which says it now encompasses all relevant conduct, that does not square with the application note. Well, it says any enhancement that would apply based on conduct for which the defendant is accountable under 1B1.3. And, you know, that seems pretty straightforward to me and especially given the consensus that one way you might use a gun or a bomb or a knife or anything else that you have is you might wave it around and threaten with it. Or you might not wave it around. You might have it in your pocket. You say, I have a gun in my pocket and I'm going to use it if you don't do what I say. They don't know whether you really have a gun in your pocket or not, but the And, Your Honor, I think that the sentence or the part of the sentence that Your Honor just read from the end of that paragraph needs to be put into context. So that paragraph starts out by discussing specific offense characteristics for possession, brandishing, use, or discharge. Right, and that's why I'm looking at use. I mean, there is the next sentence, which Ms. Wood has been pointing out. Yes, and I think that the next sentence, which generalizes those as any explosives or weapons enhancements, it tracks almost directly the enhancements under 2B, 3.1B, where there are different levels of offense level increases for use, possession, branching, discharge. And then separately, there's an enhancement for threat of death, where the threat of death is kind of intricately interrelated with the use of the firearm. So, for example, if somebody is wielding a gun in a bank and in conjunction with that is threatening to shoot, the use of that gun makes the threat credible, then there would be an issue because it's part of the use of the gun. But you're excluding the possibility that somebody comes into the bank and says, three hours ago, you know, we planted a bomb in the ladies' room of the bank, and it's a remote-controlled bomb, and we're going to set it off if you don't give us the money. Well, they don't know. They can't run off to the ladies' room and see if there's really a bomb in there. But it's that kind of, it's a threat to use an explosive device. Are you saying there's no, that that's not relevant conduct to the bank robbery? Well, it depends on what the facts of the bank robbery are. So, if that's the only threat that's made in the context of a bank robbery, you'd never be in the situation because you could not prosecute that under 924C, which requires, you know, use, discharge, et cetera. Well, just add a gun. So, add a gun to it. Say they're armed, and they say the same thing. We got a bomb planted in the back, you know, underneath the cabinet there, and it's going to go off, get moving, give us the money. I think that that is actually pretty square on these facts. So, you have somebody that's got a gun, they separately make a threat to use a bomb, and that's these facts. And it's relevant conduct. It's all part of the same bank robbery. Agreed. It is relevant conduct under 1B. So, it falls within the context of that was something that happened during the course of the commission of the robbery, so the government agrees that's relevant conduct. But the government respectfully submits that's not the end of the inquiry. The question is then, is it a specific offense characteristic applicable to relevant conduct that stems from the possession, brandishing, use, or discharge? But you can get these really odd outcomes, right? You can get a no-enhancement scenario under Catalytic, where there's actually a gun being wielded during the bank robbery, and a threat conveyed, threat of death conveyed, and we say there are no enhancements under the rule that you propose. But then here, we have an enhancement where all we have is a reference to a bomb, and no bomb wielded. So, a few notes. I mean, how does that make any sense? A few notes about that, Your Honor, that I think are worth talking about. So, the first is, and how the defense phrases this is, it kind of results in that problem where if there actually was a bomb, then you couldn't apply the enhancement, but if there's a threat of a bomb, then you could. And the critical difference, and I think it's relevant to thinking about the firearm threats too, is that if there was a bomb, and if there was a gun, and both of them were used during a bank robbery, the government would have the ability to prosecute two 924C offenses. So, it would have the flexibility to do that, because it would be two separate, you know, a firearm and an explosive device used during that bank robbery. But you couldn't do it if it was two guns. Yes, Your Honor, because of duplicity and multiplicity rules. That's right. That's exactly right. This Court's jurisprudence in the context of 922G would preclude that. It does not, under the terms of 924C, preclude that for an explosive device. So, use of a bomb, there would be a separate ability to seek punishment for that, but not for just threat of the use of a bomb. And that's what makes the enhancement, you know, as a policy matter as well, appropriate under these circumstances. But, you know, it's odd, because the government's desperate to have this enhancement, even though what the Sentencing Commission is trying to do is, in terms of the guidelines calculation, get rid of inflating the guidelines because of all of these extra things. You still have 3553, obviously. You have plenty of sentencing room under these statutes to say, this was a particularly traumatic bank robbery for the tellers, because they thought that the judges are open to that kind of argument. I can appreciate that concern, Your Honor. I do think it's appropriate to be calculating the guidelines, however correctly. Oh, I do too. But when you get a message from the Sentencing Commission saying, you know, we don't want this piling on effect with things that are relevant conduct, and we're not going to read this possession, brandishing, use, or discharge as narrowly as you do, it's not like we're going to end up with sentences that don't reflect the actual consequences of the defendant's acts and all the rest of the things under 3553. And you are correct that a district court certainly has the discretion to take into account the conduct under 3553A. However, this court's decision in Viscara certainly says, as I understand it, that when there's ambiguity on questions of double counting, I mean, the court requires an explicit statement in the guidelines or its application notes to say that it's... And of course, the argument is that this is exactly such an explicit statement, so I get back to this. Yes, Your Honor, and I believe that this discussion actually demonstrates that there is a lot of ambiguity about what this application note means, and the presumption that's created by Viscara is that it really must be explicit. So is it your position that if a fake gun had been referred to as opposed to a fake bomb, that the enhancement would not apply? Yes, Your Honor. Because it wasn't an explosive? Yes, and just under the duplicity rules that are applicable to having multiple guns during a bank robbery, that could not be separately considered to be basically a separate offense, so it would not make sense. I would also point out that if you continue to read Application Note 4 after the paragraph in question, it does specifically reference threats of death, but only in the context of drug trafficking offenses, which demonstrates that the Sentencing Commission certainly knew how to reference threats of death that are made in the course of the commission of an offense, but it limited it in that context to 2D, which is narcotics trafficking. And so had they intended to apply this to the threats of death that is available, the enhancement that's available under 2B.3.1, it could have expanded the language to, say, possession, brandishing, use, discharge of an explosive, or firearm, or... Now, but the Ninth Circuit has not bought your argument, right? The Ninth Circuit thinks that this application note got rid of Willett, at least. Yes, and I think that Aquina, which is the other... Yeah, Aquina, that's what I'm talking about. Yes, in the post-Willett case, treats this much as Your Honor reads the application note to basically apply to any relevant conduct to the 924C. Are you familiar with other circuits? I don't think that I found any circuits that specifically address this issue post-application note, where it is this conduct, where there is a use of a firearm during a bank robbery, and then a threat, but not a use of an explosive device, which is, in some ways, a very unique fact pattern. Would we be in conflict with the Diaz case out of the Eleventh Circuit if we came out? Your ruling? I would have to look back at that case, Your Honor. I just don't know it off the top of my head. I'm sorry. If there are no further questions, the government asks that this court affirm the judgment of the district court. Thank you. All right, thank you. So, Ms. Wood, you can have a full minute. So, I think in response to counsel's argument, the court is, Judge Wood, you were correct when you said that the counter is the statute, or the Sentencing Commission note is not ambiguous. I think the plain language does not limit relevant conduct to relevant conduct that's related to the 924C offense. But to the extent that it is ambiguous, the canons of statutory interpretation tell us to look to the legislative history, which in this case, I think, is that reason for the amendment commentary that the Sentencing Commission issued. And they said that a case that's close to being on all fours with this case was wrongly decided. So, I think there you have it. With regard to the absurd results that could occur if the government's position is accepted, if you look to United States versus Eubanks, you can see one of the absurd results. There, you have a case where a couple people go in, commit a robbery, and the defendant literally beats one of the victims over the head with a plastic gun. Yet, that could not be enhanced while sort of an amorphous bomb threat, and I'm not trying to denigrate the seriousness of that, but a bomb threat where there is no actual bomb could be enhanced. And I think that is one example that falls outside the government's discussion of separate 924C conviction that just shows the absurd results that could happen if their interpretation is accepted. All right. I think that needs to be it, Ms. Wood, but you took this case, I believe, by appointment? I did. And we appreciate your help, and I'm sure your client does as well, and thanks as well, of course, as always, to the government. We will take the case under advisement.